936 A.2d 957

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DANIEL LUNA, DEFENDANT–APPELLANT.

Argued September 10, 2007—Decided December 19, 2007.

206

*Gilbert G. Miller*, Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars*, Public Defender, attorney).

*Catherine A. Foddai*, Assistant Prosecutor, argued the cause for respondent (*John L. Molinelli*, Bergen County Prosecutor, attorney).

Chief Justice RABNER delivered the opinion of the Court.

This case involves a defendant who was tried and convicted *in absentia* while the court and counsel knew he was in jail in another state. Because the court did not conduct an inquiry to determine whether defendant willingly absented himself from trial, it is not possible to infer that defendant knowingly waived his right to be present. For that reason, we reverse defendant's convictions and remand for a new trial.

I.

A.

On March 26, 2001, a grand jury indicted defendant Daniel Luna and five others on charges related to an armed robbery of a

home in Ridgefield, New Jersey. Specifically, the indictment charged first-degree armed robbery (*N.J.S.A.* 2C:15–1), second-degree kidnapping (*N.J.S.A.* 2C:13–1(b)), second-degree armed burglary (*N.J.S.A.* 2C:18–2), second-degree possession of a weapon for an unlawful purpose (*N.J.S.A.* 2C:39–4(a)), third-degree possession of a handgun without a permit (*N.J.S.A.* 2C:39–5(b)), fourth-degree possession of hollow nose bullets (*N.J.S.A.* 2C:39–3(f)), and fourth-degree possession of a radio to intercept emergency communications while in the course of committing a crime (*N.J.S.A.* 2C:33–22).

At a status conference on April 29, 2002, the court engaged in a colloquy with Luna and specifically informed him that trial was scheduled to begin on July 16, 2002. The court warned Luna that if he did not appear, trial would proceed without him. In addition, the court explained that the trial date might be rescheduled, and that Luna was to remain in contact with his attorney to stay aware of any new date.

Luna failed to appear in court on July 16, 2002. The trial did not start that day because a witness for the State was unavailable, and the court rescheduled the trial for August 12, 2002.

Luna did not appear on August 12, 2002 either. Jury selection proceeded without him and was completed on Tuesday, August 13, 2002. Later that day, after the jury had been sworn but before the start of testimony, the assistant prosecutor learned that Luna had been arrested in New York the previous Friday and was incarcerated on a prison barge near Riker's Island. The prosecutor reported that news in open court the following morning. Defense counsel then asked for an adjournment in order to arrange for Luna to be brought to court from New York. Pursuant to *State v. Givens,* 353 *N.J.Super.* 280, 802 *A.*2d 563 (App.Div. 2002), counsel requested that the trial court conduct an inquiry and question Luna before continuing the trial. Counsel also explained that he sent a letter to Luna's parents' home informing Luna of the rescheduled trial date and that, based on their prior

dealings in the case, counsel did not believe Luna would have voluntarily absented himself from trial.

The trial court denied the motion for an adjournment, noting Luna's failure to appear on the original trial date and his failure to contact the court or counsel about his whereabouts at any time since then. Without developing a full record, the court concluded that Luna "chose not to appear" and conducted the trial *in absentia.* After a three-day trial, the jury convicted Luna on all six counts. Luna appealed.[1]

B.

On appeal, Luna argued that he was denied his constitutional right to be present at trial, that certain trial testimony should have been excluded as hearsay, and that his sentence was manifestly excessive. On June 9, 2006, the Appellate Division affirmed the convictions in an unpublished opinion but remanded for resentencing pursuant to *State v. Natale,* 184 *N.J.* 458, 878 *A.*2d 724 (2005).

The panel found it was a reasonable exercise of discretion for the trial court to rule that Luna's failure to appear constituted a voluntary waiver of his right to be present at trial. The panel reasoned that Luna was notified personally of his obligation to appear on the original trial date and of his responsibility to communicate with counsel about any changes to the court's schedule. "His failure to honor both of these obligations was unrelated to his incarceration on August 9, 2002."

This Court granted Luna's petition for certification. 188 *N.J.* 579, 911 *A.*2d 71 (2006).

II.

Luna argues that the Appellate Division erred in two respects by affirming the decision of the trial court. First, he asserts that

---

[1] A co-defendant was also tried and convicted *in absentia.* His case is not implicated in this appeal.

he was denied his constitutional right to be present at trial and submits that, under the circumstances of this case, his absence from trial could not be construed as a voluntary waiver. Instead, he argues that the trial court should have held a hearing about his intentions. He also asks this Court to overturn *State v. Hudson*, 119 *N.J.* 165, 574 *A.*2d 434 (1990), and to adopt guidelines for use by trial judges after finding a waiver. Second, Luna claims that inadmissible hearsay was presented at trial, warranting a reversal.

The State claims that Luna is procedurally barred from challenging his trial *in absentia* under *Rule* 3:20–2. In addition, the State maintains that, under *State v. Finklea*, 147 *N.J.* 211, 686 *A.*2d 322 (1996), *cert. denied*, 522 *U.S.* 837, 118 *S.Ct.* 110, 139 *L.Ed.*2d 63 (1997), Luna's failure to appear on the original trial date constituted a knowing and voluntary waiver of his right to be present at trial. The State submits that Luna's later incarceration and failure to appear at the rescheduled trial date did not alter that conclusion, and that the trial court properly refused to delay the trial.

### III.

#### A.

The United States and New Jersey Constitutions guarantee a criminal defendant "the right ... to be confronted with the witnesses against him." *U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10. Essential to that guarantee is the right of the accused to be present in the courtroom at every stage of the trial. *Illinois v. Allen*, 397 *U.S.* 337, 338, 90 *S.Ct.* 1057, 1058, 25 *L.Ed.*2d 353, 356 (1970) (citing *Lewis v. United States*, 146 *U.S.* 370, 13 *S.Ct.* 136, 36 *L.Ed.* 1011 (1892)); *State v. Whaley*, 168 *N.J.* 94, 99, 773 *A.*2d 61 (2001); *Finklea, supra*, 147 *N.J.* at 215, 686 *A.*2d 322; *Hudson, supra*, 119 *N.J.* at 171, 574 *A.*2d 434. That right is also protected by the due process clause of the Fourteenth Amendment "to the extent that a defendant's absence would hinder a fair and just hearing." *Finklea, supra*, 147 *N.J.* at 216, 686 *A.*2d 322.

■ Our system of justice functions best when the accused is present throughout trial. Defendants are able to communicate with counsel, participate in trial strategy, assist in presenting a defense, and aid with cross-examination. *Finklea, supra,* 147 *N.J.* at 216, 686 *A.*2d 322; *Hudson, supra,* 119 *N.J.* at 172, 574 *A.*2d 434. The right to be present encompasses the independent right defendants have to represent themselves, if they so choose. *See Faretta v. California,* 422 *U.S.* 806, 95 *S.Ct.* 2525, 45 *L.Ed.*2d 562 (1975); *State v. Reddish,* 181 *N.J.* 553, 859 *A.*2d 1173 (2004). Overall, a defendant's presence promotes public confidence in our courts as instruments of justice, *Hudson, supra,* 119 *N.J.* at 172, 574 *A.*2d 434, and helps insure the integrity of a trial's outcome.

■ The right to be present at trial is not absolute. Otherwise, defendants could halt trials simply by absenting themselves. *Diaz v. United States,* 223 *U.S.* 442, 458, 32 *S.Ct.* 250, 255, 56 *L.Ed.* 500, 506 (1912). As a result, our rules provide that when a defendant explicitly or implicitly waives the right to be present, a trial may be held *in absentia.*

■ *Rule* 3:16(b) codifies this balancing of interests:

The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, unless otherwise provided by Rule. Nothing in this Rule, however, shall prevent a defendant from waiving the right to be present at trial. A waiver may be found either from (a) the defendant's express written or oral waiver placed on the record, or (b) the defendant's conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court or has signed a written acknowledgment of the trial date, or (2) trial has commenced in defendant's presence.

[*R.* 3:16(b).]

Thus, where there is no express waiver, the touchstone is whether a defendant's conduct reveals a knowing, voluntary, and unjustified absence.

■ *Rule* 3:16(b) does not require that a defendant receive actual notice of a rescheduled trial date. "[O]nce a defendant has been given actual notice of a scheduled trial date, nonappearance on the scheduled or adjourned trial date is deemed a waiver of the

right to be present during the trial absent a showing of justification by the defendant." *Finklea, supra,* 147 *N.J.* at 213, 686 *A.*2d 322.

■ Failure to appear at a scheduled trial date, however, is not an irrevocable waiver. A defendant can always reclaim the right to be present by appearing in court on the rescheduled date. *See Illinois v. Allen, supra,* 397 *U.S.* at 343, 90 *S.Ct.* at 1061, 25 *L.Ed.*2d at 359 (noting that defendant removed from court for disruptive behavior can reclaim right to be present as soon as defendant reforms his or her conduct).

New Jersey's rule differs from its federal counterpart, *Rule* 43 of the Federal Rules of Criminal Procedure. Under the federal rule, "[a] defendant who was *initially present* at trial ... waives the right to be present ... when the defendant is voluntarily absent after the trial has begun...." *Fed.R.Crim.P.* 43(c) (emphasis added). In rejecting that approach, this Court noted:

We see no principled reason to distinguish "between the misconduct of a defendant who deliberately leaves the courtroom shortly after the trial begins and that of a defendant who does so after he has been told that the trial is about to begin." *People v. Sanchez,* [65 *N.Y.*2d 436, 492 *N.Y.S.*2d 577, 482 *N.E.*2d 56, 60 (1985)]. In either case, the absence indicates a defiance of the judicial system and can lead to a severe disruption of the criminal calendar.

[*Hudson, supra,* 119 *N.J.* at 181, 574 *A.*2d 434.]

### B.

■ We first address the State's argument that Luna is procedurally barred from moving for a new trial because he did not bring his motion prior to sentencing, as required by *Rule* 3:20–2. In light of the critically important question presented by defendant's absence from trial under the facts of this case, this rule can and should be relaxed in the interest of justice. *R.* 1:1–2.

### C.

It is not clear from the record whether Luna had actual notice of the rescheduled trial date. The court informed him of the

original date, July 16, 2002, in open court. When he failed to appear on that day, trial was rescheduled for August 12. Luna's counsel then sent a letter to defendant's parents in an effort to advise him of the rescheduled date.

■ Because Luna had actual notice of the original date, it was not improper for the trial court to start trial and begin jury selection in Luna's absence. Under *Finklea, supra*, Luna's absence on August 12 could be deemed a knowing waiver of the right to be present at trial. 147 *N.J.* at 213, 686 *A.*2d 322 (holding that nonappearance on adjourned date is deemed waiver once defendant has actual notice of original trial date).

■ The matter grew more complicated the following morning, when the prosecutor reported that Luna was incarcerated in a prison barge near Riker's Island on unrelated charges. At that point, Luna's conduct was susceptible of at least two meanings: (1) he had no intention of appearing at trial, even if he could; or (2) he wanted to attend but was unable to contact the court and counsel from jail in the few days since his arrest. That difference matters because without more information, there was no factual basis to conclude that Luna knowingly and voluntarily waived his presence at trial by failing to appear. Under those circumstances, the trial court lacked the factual basis to make the critical finding *Rule* 3:16 requires: that Luna's conduct evinced a *knowing* and *voluntary* absence. For that reason, defense counsel properly asked for a hearing before opening arguments in order to clarify Luna's situation and intention.

This Court has not addressed whether a trial *in absentia* may start or continue if the court and both parties know the defendant is incarcerated. As the Appellate Division has noted, some courts impose a duty on defendants to notify the court or counsel about their incarceration; absent such notice, a voluntary waiver can be found. *Givens, supra,* 353 *N.J.Super.* at 288, 802 *A.*2d 563; *see, e.g., Commonwealth v. Perez,* 757 *A.*2d 955, 956 (Pa.Super.Ct.2000) (upholding conviction where defendant was incarcerated on second day of trial and did not advise court or counsel of incarceration);

*State v. Garza*, 150 *Wash*.2d 360, 77 *P*.3d 347, 351–52 (2003) (imposing duty on incarcerated defendants to show they made reasonable efforts to contact court in order to retract preliminary finding of voluntary waiver).

Other courts have adopted a *per se* rule that "a defendant is incapable of a voluntary waiver while incarcerated and that a retrial must therefore be granted in every such instance." *Givens, supra*, 353 *N.J.Super.* at 287–88, 802 *A*.2d 563; *see, e.g., State v. Chavez–Inzunza*, 145 *Ariz.* 362, 701 *P*.2d 858, 861 (App.1985) (holding that defendant incarcerated in Mexico was not voluntarily absent from trial); *State v. Okumura*, 58 *Haw.* 425, 570 *P*.2d 848, 851–52 (1977) (holding that court rule allowing trials to proceed in defendant's absence applied to defendant who escaped or deliberately failed to appear without reason, not to defendant in custody); *People v. Liming*, 183 *Ill.App*.3d 960, 132 *Ill.Dec.* 308, 539 *N.E*.2d 871, 872 (1989) (holding as matter of law that incarcerated defendant is not voluntarily absent from court proceeding and has not waived right to appear); *State v. Houtz*, 714 *P*.2d 677, 678 (Utah 1986) (holding that incarcerated defendant "is not free to make a voluntary decision about whether or not he will attend the court proceedings").

The Appellate Division rejected a *per se* approach in *Givens*. In that case, the defendant failed to appear for trial and was convicted *in absentia*. Months later, she moved for a new trial claiming that her absence was involuntary because she was incarcerated. The trial court set aside the verdict on that ground. The Appellate Division declined to employ a *per se* rule and held that "more was required to substantiate this conclusion." *Givens, supra*, 353 *N.J.Super.* at 288, 802 *A*.2d 563. The court explained,

> [w]hile incarceration is an obvious and powerful fact to be considered giving rise to a factual presumption against voluntary waiver, it should not foreclose the hearing judge from further inquiry as to the reason notification was not made, whether reasonable efforts for notification were possible, what, if any, action was taken by or on behalf of the defendant, and whether the defendant understood or was capable of understanding that he or she had a duty of notification.
>
> [*Id.* at 289, 802 *A*.2d 563.]

We do not equate a defendant's incarceration with involuntariness in all situations. There may be occasions where a defendant has made no effort to notify the court or counsel from jail despite ample time and opportunity to act. In other instances, a defendant may have taken reasonable action or tried to do so without success. A finding that a defendant's absence was voluntary may be appropriate in the former case but not the latter.

██ The time when the court learns of a defendant's incarceration also matters. In this case, the court and all parties knew of Luna's incarceration right after jury selection. When a trial court has actual knowledge—before or during trial—that a defendant is incarcerated and thus unable to appear, the court must conduct an inquiry before proceeding with trial in order to determine if defendant's absence is knowing and voluntary. Otherwise, the court will be unable to make the finding required under *Rule* 3:16(b), and a trial conducted *in absentia* after a baseless finding would have to be reversed.

██ The trial court has wide latitude in conducting such an inquiry. The preferred course would be to transfer the defendant to state custody for a brief hearing. If that is not possible, it may also be appropriate to rely on a defendant's sworn written statement or certified representations from counsel, if counsel has spoken with or visited the defendant. We leave to the trial court's discretion the best way to establish a proper record that will provide a basis for the finding *Rule* 3:16(b) requires. In any event, trials should not go forward unless and until a reliable inquiry is completed.

██ In other cases, the fact of incarceration will first come to light after trial. In those instances, as in *Givens,* the trial court will already have made a finding that defendant's absence was voluntary, supported by the particular facts of the case. Defendants may then bring a post-trial motion under *Rule* 3:20-2 for a new trial. At a hearing, defendants bear the burden of showing that their failure to attend trial was due to their incarceration and

that they did not have the ability or means to advise their attorney or the court, directly or indirectly, of their plight. *See Finklea, supra,* 147 *N.J.* at 220, 686 *A.*2d 322. After giving the State the opportunity to respond, the court must then determine whether their absence at trial was voluntary.

 In this case, defense counsel made a timely motion for an adjournment after jury selection, which was denied. Without a hearing, the trial court lacked a basis to make the finding required by *Rule* 3:16(b) and proceed with trial. In light of the complete circumstances presented, the failure to allow defense counsel the opportunity to explore the information just received—that Luna was in jail in another state—rendered the subsequent proceedings defective. Therefore, a remand for a *Rule* 3:16(b) hearing after the fact is insufficient, and a new trial is warranted.

## IV.

Luna also asks this Court to overturn its decision in *State v. Hudson.* This Court considered and rejected a similar request in *Finklea,* and there is no reason to disturb that judgment.

 Hudson held that "a defendant's knowing, voluntary, and unjustified absence *before or after trial has commenced* does not prevent trial from proceeding *in absentia." Hudson, supra,* 119 *N.J.* at 182, 574 *A.*2d 434 (emphasis added). After *Hudson,* the United States Supreme Court decided *Crosby v. United States,* 506 *U.S.* 255, 262, 113 *S.Ct.* 748, 753, 122 *L.Ed.*2d 25, 33 (1993), which limited trials *in absentia* to federal criminal cases where a defendant was present at the start of trial.

*Crosby* rested on a straightforward interpretation of the language in *Fed.R.Crim.P.* 43, which differs from *Rule* 3:16. The decision was not based on constitutional grounds. *Crosby, supra,* 506 *U.S.* at 262, 113 *S.Ct.* at 753, 122 *L.Ed.*2d at 33. "Absent any constitutional mandate limiting trials *in absentia* to cases in which a defendant is present when the trial commences, *Rule* 3:16

controls." *Finklea, supra,* 147 *N.J.* at 222, 686 *A.*2d 322. Accordingly, we once again affirm *Hudson.*

Luna also asks the Court to adopt guidelines for use by trial judges after finding a waiver. Before proceeding to trial, he submits that trial courts should have to consider particular factors, such as the difficulty of rescheduling, the chance that evidence will be lost or witnesses will disappear, and the burden on the State, particularly in multiple-defendant trials. We decline to impose the guidelines Luna requests.

Trial judges have discretion in deciding whether to start a trial when a defendant is inexcusably absent. They may consider relevant factors like the ones defendant proffers, but we decline to adopt a rule requiring them to evaluate those particular factors in all cases. As *Hudson* explains, "[w]e cannot allow crowded court calendars to be disrupted by defendants who knowingly and voluntarily absent themselves from trial, and then seek reversal of their convictions on the ground that the trial date could conveniently have been rescheduled." 119 *N.J.* at 183, 574 *A.*2d 434. Thus, a defendant's informed and inexcusable absence continues to provide sufficient grounds to justify denial of an adjournment. *Id.* at 184, 574 *A.*2d 434.

## V.

Because a new trial is required, we address the admissibility of two portions of the trial testimony. First, a police officer testified that a housekeeper positively identified the defendant as one of the robbers. Although the prior identification would have been admissible under *N.J.R.E.* 803(a)(3), had the housekeeper appeared as a witness, the State properly conceded on appeal that, in her absence, reference to the housekeeper's out-of-court statement was inadmissible hearsay. *See N.J.R.E.* 801(c).

Second, the homeowner testified that, after speaking to her housekeeper, she telephoned 911 and reported what the housekeeper had told her: that five men with guns had invaded

her home. A police officer investigating the crime similarly testified that he heard a radio transmission that described "a home invasion with a handgun by five Hispanic males." Defendant did not object at trial but now argues that this evidence was inadmissible hearsay. The State claims the statements were offered to explain and provide context for the actions of the witnesses.

Those statements were hearsay. *See N.J.R.E.* 801(c). At a retrial, the testimony should be limited in a manner that allows the witnesses to provide appropriate context but not secondhand details about the crime or the defendants. In other words, witnesses may testify that they took certain investigative steps based "upon information received." *State v. Bankston,* 63 *N.J.* 263, 268–69, 307 *A.*2d 65 (1973). But they cannot repeat specific details about a crime relayed to them by a radio transmission or another person without running afoul of the hearsay rule. *Ibid.*

In view of the ruling in Point III, it is not necessary to determine if the evidence admitted at trial constituted harmless error.

## VI.

For the reasons set forth above, we reverse the judgment of the Appellate Division, vacate defendant's convictions and sentence, and remand for a new trial.

*For reversal/vacation and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.